UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

QUANSHAVIA GREEN and ANNIE GREEN,

Plaintiffs,

v.   Case No. 6:11-cv-1774-Orl-18KRS

UNITED STATES OF AMERICA,

Defendant.

# ORDER

This action was tried before the Court on November 13, 2013. Plaintiffs Quanshavia Green and Annie Green (collectively "Plaintiffs") initiated this case against the United States of America following an automobile collision involving a vehicle driven by Luis J. Russe, an employee of a federal government agency. Through their Complaint (Doc. 1), Plaintiffs each assert a single claim for negligence against the United States acting through the United States Department of Agriculture ("USDA").[1]

## I. FINDINGS OF FACT

Prior to the date of the collision that gave rise to this case, each plaintiff had been involved in at least one automobile collision. Annie Green had been in three motor vehicle accidents occurring on uncertain dates, although only one of these accidents resulted in any injury. She testified that those injuries were "minor," and that she received treatment from a chiropractor as a result. Quanshavia Green was involved in an automobile accident approximately three years prior

---

[1] The Court dismissed Plaintiffs' claims against Luis J. Russe prior to trial. (*See* Doc. 23 at 3.) Additionally, the Court dismissed State Farm Mutual Automobile Insurance Company's ("State Farm") crossclaim against Russe. (*See* Doc. 28 at 6.) Finally, upon stipulation of dismissal, the Court dismissed Plaintiffs' claims against State Farm. (*See* Doc. 34.)

to the collision that gave rise to this case. She testified that the prior accident did not result in any "real" injuries. However, she did receive treatment from a chiropractor but stopped once she felt that treatment served no purpose.

On November 19, 2009, Annie Green drove a 1994 four-door Ford Tempo to a location within Colonial Plaza in Orlando, Florida to pick up her paycheck. Quanshavia Green rode in the vehicle's front passenger seat, and Annie Green's young grandson (Quanshavia Green's nephew) rode in the back seat. At all times relevant, Plaintiffs were each wearing their seat belts.

To enter Colonial Plaza, Annie Green made a right turn onto Coy Drive from Colonial Drive. In this direction, Coy Drive ends at a stop sign in a T-shaped intersection a short distance from Colonial Drive. Russe, a USDA employee, turned his USDA-owned pickup truck onto Coy Drive after Annie Green. While Annie Green had her vehicle stopped, Russe's truck collided into the rear of her vehicle. However, neither plaintiff could say whether Russe failed to stop at the stop sign before the collision. Both Annie Green and Quanshavia Green could not recall whether any part of their bodies struck any part of the inside of their vehicle as a result of the collision. The only testimony from Plaintiffs related to the amount of force created by the impact of Russe's vehicle was Quanshavia Green's testimony that the impact was forceful enough to cause her nephew to "scream his head off." Russe and a third-party witness pulled over to confer and report the collision. Annie Green testified that Russe apologized and admitted he wasn't paying attention. Annie Green called police to report the collision but did not call for an ambulance because there was no apparent need for emergency medical care. After completing a report of the incident, Annie Green continued to pick up her paycheck.

Annie Green explained that later on the day of the collision, she felt a small amount of pain in her neck radiating down to her shoulders and spine. Five days after the collision, Annie Green sought care in the Emergency Room of Orlando Health Dr. Phillips Hospital. At the ER, she was given muscle relaxers and pain medication and advised to follow up with a physician specializing in orthopedic medicine. However, she did not immediately seek services from an orthopedist. Instead, Annie Green sought chiropractic treatment at Kirkman Chiropractic. Dr. Gary Grossman testified that Annie Green's treatment included icing, massage, electrical muscle stimulation, and chiropractic adjustment. Annie Green's treatment at Kirkman Chiropractic continued until August 2010—shortly after she exhausted her Personal Injury Protection ("PIP") benefits.

After a referral from her chiropractor, Annie Green did later seek care from a physician specializing in orthopedic medicine. Annie Green's orthopedist concluded that her neck pain resulted from bulging discs in C4-5 and C6-7 and a herniated disc at C5-6. The orthopedist prescribed Annie Green meloxicam, methocarbamol, and Utram. Annie Green testified that she did not take the prescribed Ultram (a pain reliever) because she was concerned about the habit-forming propensities of some pain relievers. Finally, the orthopedist referred Annie Green to undergo an MRI. The radiologist who reviewed the MRI images concluded that they reflected congenital narrowing of the spinal canal on the basis of short pedicles, disc bulging at C4-5 and C6-7, and a disc bulge and superimposed midline posterior disc herniation at C5-6.

Annie Green testified that the chiropractic treatments she received after the collision alleviated some of her neck pain; however, the pain running from her neck into her shoulders persisted. Additionally, she testified that she "always" has pain, needs to continually take pain medication, and has trouble sleeping. However, she is now able to do household chores, drive, and

pick up her grandchildren. Annie Green initially testified that shortly after the collision, she declined work opportunities and was unable to work due to pain. However, she later conceded that she had worked during the one to two months following the collision and that she actually worked a greater amount of time during that period than before the collision. In fact, her work records reveal that she worked during the week immediately following the collision. Finally, Annie Green's primary care physician has not treated her for any condition resulting from the collision.

Quanshavia Green testified that she began to experience pain in the middle of her back and lower back as well as soreness in her shoulders a "few days" after the collision. Thirteen days after the collision, she began to experience "sharp" pain and sought treatment at Orlando Health Dr. Phillips Hospital, where she was prescribed heat and ice and referred to an orthopedist. However, Quanshavia Green did not follow up with an orthopedist. Instead, on December 5, 2009, she began treatment with Kirkman Chiropractic. Quanshavia Green testified that she did not go to Kirkman Chiropractic as often as she "should have" because she had to walk there. Although she was taking classes at Valencia College around the time of the collision and no longer taking classes following the collision, Quanshavia Green testified that the collision did not prevent her from continuing her coursework. Quanshavia Green discontinued treatment at Kirkman Chiropractic in September 2010, shortly before she would have exhausted her PIP benefits. Quanshavia Green testified that she continues to experience sharp pains in her back and that her condition has not improved. However, she has not sought any further medical treatment for her conditions allegedly resulting from the collision.

Both Annie Green and Quanshavia Green testified that they did not seek treatment for the child that was riding in the back seat of the vehicle. Quanshavia Green testified that the child "seemed fine" after the collision.

The government presented expert testimony from Dr. Joseph Abal, an expert in automobile accident reconstruction. In order to form his opinions regarding the collision, Dr. Abal visited the site of the collision, took photographs of the site, inspected the truck that Russe was driving, reviewed photographs of damage to the vehicle that Annie Green was driving, and examined the bumper structure of another vehicle of the same make, model, and model year of that which Annie Green was driving during the collision. Based on his evaluation, Dr. Abal concluded that the collision between Russe's vehicle and Annie Green's vehicle occurred at a "very low speed." Specifically, Dr. Abal estimated that the collision caused a change in velocity of between 1.3 and 1.5 miles per hour as measured at the bumper of Annie Green's vehicle. Further, Dr. Abal estimated that such an impact would produce 0.8 times gravitational force at the bumper of the vehicle. As a result of other structures in the vehicle, namely seat cushioning, the impact would result in even less force being transmitted to the occupants of the vehicle. Based on the standards established by the National Highway Traffic Safety Administration for bumpers in passenger cars, a collision occurring with this range of speed and producing such level of force would not produce injury to a vehicle's occupants.

## II. CONCLUSIONS OF LAW

Plaintiffs bring their claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). With regard to FTCA claims, the Court applies the law of the state where the act or

omission occurred. *Id.* § 1346(b)(1). The act or omission that gave rise to this case occurred in Florida; therefore, Florida law applies.

Florida's common law of negligence requires that the driver of an automobile exercise due care to not cause a collision. *See Eppler v. Tarmac Am., Inc.*, 752 So. 2d 592, 594 (Fla. 2000) (quoting *Jefferies v. Amery Leasing, Inc.*, 698 So. 2d 368, 370-71 (Fla. 5th DCA 1997)). In the case of a rear-end vehicle collision, a rebuttable presumption of negligence attaches as to the driver of the rear vehicle. *Id.* However, "where evidence is produced from which a jury could conclude that the front driver in a rear-end collision was negligent and comparatively at fault in bringing about the collision, the presumption is rebutted and the issues of disputed fact regarding negligence and causation should be submitted to the jury." *Birge v. Charron*, 107 So. 3d 350, 361 (Fla. 2012). If there is no such evidence, the driver of the rear vehicle is liable as a matter of law. *Id.*

A plaintiff who is not negligent can sue the driver who causes his or her vehicle to collide with the plaintiff, even in absence of permanent injury, and recover his or her past and future medical expenses. *See McClellan v. Indus. Fire & Cas. Ins. Co.*, 475 So. 2d 1015, 1016 (Fla. 4th DCA 1985). However, when awarding economic damages, a court must reduce the award to the amount for which the plaintiff is actually liable to his or her medical provider or providers after any such provider reduces its bill by the amount received from the plaintiff's PIP insurer, the amount of any contractual discounts, and any write-offs or write-downs of the provider's bill. Fla. Stat. § 768.76; *Goble v. Forhman*, 901 So. 2d 830, 832 (Fla. 2005). Unless a plaintiff has suffered

permanent injury within a reasonable degree of medical probability, he or she may not recover noneconomic damages for pain and suffering or mental anguish. *See* Fla. Stat. § 627.737(2)(b).[2]

In this case, Plaintiffs put forward evidence that Russe caused the rear-end collision. The government did not put on any evidence that Russe did not cause the collision, nor did the government present any evidence that either plaintiff somehow negligently caused or contributed to the collision. Effectively, the government conceded liability for the collision. Therefore, Plaintiffs may recover their past and future medical expenses less any set-off amounts. The parties have stipulated that after accounting for set-offs from collateral sources and write-offs, Annie Green owes $542.00 for past medical expenses related to the accident. (Doc. 43 ¶ 31; Doc. 44 ¶ 15.) Additionally, the parties have stipulated that after accounting for set-offs from collateral sources and write-offs, Quanshavia Green owes $1,242.00 for past medical expenses related to the accident. (Doc. 43 ¶ 31; Doc. 44 ¶ 15.) Plaintiffs did not present any evidence as to their future medical expenses. Therefore, the Court will award Plaintiffs these stipulated amounts as damages for their past and future medical expenses.

Based on Dr. Abal's expert testimony and several other factors, the Court finds that neither Annie Green nor Quanshavia Green suffered a permanent injury as a result of the collision. First, no party presented any evidence to the Court that the collision was forceful enough to cause the airbags to deploy in Annie Green's vehicle. Next, the durational lapse between the date of the collision and the date each plaintiff initially sought any sort of medical treatment suggests against

---

[2] Section 627.737(2), Florida Statutes, also provides that a plaintiff may recover noneconomic damages for pain and suffering and mental anguish in cases of significant and permanent loss of an important bodily function, significant and permanent scarring or disfigurement, or death. However, the parties presented no evidence that any of these occurred in the instant case.

their having sustained serious or permanent injury. More so, the fact that no person sought medical care, apparently at any time, for the young child in the back seat of the vehicle casts doubt that either adult occupant in the front of the vehicle is permanently injured as a result of the collision. Furthermore, Annie Green's treatment recommendation of only ice and heat upon leaving the emergency room suggests that she did not suffer a permanent injury. Also, while Annie Green testified as to lasting physical limitations and pain following the collision, her general credibility was undercut by her prior testimony that she was unable to work in the one to two months following the accident, which was shown to be false by her work records. Finally, Plaintiffs' cessation of medical treatment shortly before and shortly after exhausting their PIP benefits suggests against the presence of a permanent injury for either plaintiff. Because the Court concludes that neither plaintiff suffered a permanent injury as a result of the collision, Plaintiffs may not recover noneconomic damages for pain and suffering or mental anguish.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED** and **ADJUDGED**:

1. The Clerk of the Court is directed to **ENTER JUDGMENT** in favor of Plaintiff Annie Green against Defendant United States of America in the amount of $542.00. Further, the Clerk of the Court is directed to **ENTER JUDGMENT** in favor of Plaintiff Quanshavia Green and against Defendant United States of America in the amount of $1,242.00. Post-judgment interest shall accrue in accordance with 28 U.S.C. § 1304(b)(1)(A).

2. The Clerk of the Court is directed to **TERMINATE** any pending motions.

3. The Clerk of the Court is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on this 21 day of November, 2013.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record